## MICHAEL MURLEY *vs.* FRANCIS ROCHE.

Suffolk. ˙ January 14. — February 21, 1881.  COLT, J., absent.

In an action for personal injuries occasioned to a boy under seven years of age, by being run over by the defendant's wagon, while sitting on the sidewalk of a street, the evidence was conflicting as to the character and condition of the sidewalk, and whether it was clearly separated from the rest of the street. The judge instructed the jury fully as to the rights of travellers with wagons and travellers on foot in public highways; and that the plaintiff could not recover, unless, at the time of the injury, he was in that part of the highway where it was then proper for him to be, and was in the exercise of due care. The defendant then asked the judge to rule that, if the plaintiff was sitting on the sidewalk, and the sidewalk was a part of the street over which both wagons and foot-passengers passed, he was negligent, and could not recover. The judge declined so to rule; and ruled as follows: "If the boy was sitting on a sidewalk which was clearly defined and distinguishable from the travelled way, which was sufficient for persons passing with teams, he had a right to be there, that was a proper use of the sidewalk, and the defendant would have no right to drive his horse on the sidewalk against him." *Held,* that the defendant had no ground of exception.

TORT for personal injuries occasioned to the plaintiff, a boy under seven years of age, by being run over by a wagon driven

by the defendant's servant. Answer, a general denial. Trial in the Superior Court, before *Dewey*, J., who allowed a bill of exceptions in substance as follows:

The plaintiff offered evidence tending to show that, on the day of the accident, he was sitting on the sidewalk of Cherry Street, in Boston, about two or three feet from a picket fence bordering on the street, not far from his residence, and was playing there by himself; and that, while he was sitting there, the defendant's horse and wagon managed by the defendant's servant were driven upon him and caused the injuries complained of.

There was also evidence tending to show that the street, which was in a remote part of the city, was forty feet wide; that there was no sidewalk in the same, but the street was level from side to side; that the street was rough and gravelly, and the sidewalk, so called, was not defined or distinguishable from the rest of the street, and the part usually travelled by foot passengers was not more than a foot or a foot and a half wide, measuring from the fence; that there was nothing to prevent teams from passing from side to side of the street; and that the whole of the street was used alike by teams and foot-passengers.

The evidence as to the character and condition of the sidewalk, as to being the same as the rest of the street, was controverted by the plaintiff's witnesses, and this question was submitted to the jury. There was evidence tending to show that the elder brother of the plaintiff was about five or six feet from him, and saw the defendant's horse and wagon coming, but gave no warning either to the plaintiff of their approach and his danger, or to the driver of the position of the plaintiff; that the driver of the team was driving at a moderate pace, and carefully, and did not see the plaintiff until an instant before the accident, and until it was too late to prevent it; and that he stopped his horse immediately upon seeing him, and the front wheel of the wagon only passed over the plaintiff.

The judge instructed the jury fully as to the rights of travellers with teams and persons on foot in the public highways; that persons on foot, in passing over or across the way travelled by teams, were bound to exercise all necessary care to avoid said teams; that, if they were negligent in that respect and were injured, they could not recover; that persons passing with teams

over that part of the highway used for travel with teams should exercise all the care reasonably necessary not to interfere with or injure foot-passengers crossing over or across that part of the highway; that if, owing to their negligence, the foot-passenger, being in exercise of due care, was injured, the party passing with the team would be liable; and that the plaintiff could not recover, unless, at the time of the injury, he was in that part of the highway where it was then proper for him to be, and was in the exercise of due care.

The defendant requested the judge to instruct the jury as follows: "If the plaintiff was sitting on the sidewalk, and the sidewalk was a part of the street over which both teams and foot-passengers passed, he was negligent, and cannot recover."

The judge declined so to instruct the jury, but instructed them as follows: "If the boy was sitting on a sidewalk which was clearly defined and distinguishable from the travelled way, which was sufficient for persons passing with teams, he had a right to be there, that was a proper use of the sidewalk, and the defendant's servant would have no right to drive his horse on the sidewalk against him."

The jury returned a verdict for the plaintiff; and to the last ruling and refusal to rule the defendant alleged exceptions.

*W. E. L. Dillaway*, for the defendant.

*R. Morris*, for the plaintiff.

LORD, J. As we construe this bill of exceptions, it raises but the single question, whether it was the duty of the presiding judge to rule, as matter of law, that it was contributory negligence in the plaintiff to sit where he was sitting upon the street. We cannot say, as matter of law, that it is negligence in a child under seven years of age to sit within the limits of a highway forty feet wide, about two or three feet from a picket fence bordering on the street, not far from his residence, with an elder brother five or six feet from him, the character of the street, its conformation, the manner in which it was wrought, whether with or without sidewalks, being undisclosed and in dispute.

Before passing to the question whether the particular instruction requested should have been given, and whether the instruction as given was erroneous, it is necessary to see what had already been given, and whether the presiding judge was called

upon to make any modification of the same, or to give contrary instructions. The bill of exceptions, after stating the conflicting claims of the parties as to the condition of the street and its entire structure, adds : " The judge instructed the jury fully as to the rights of travellers with teams and persons on foot in the public highways; that persons on foot, in passing over or across the way travelled by teams, were bound to exercise all necessary care to avoid said teams; that, if they were negligent in that respect and were injured, they could not recover; that persons passing with teams over that part of the highway used for travel with teams should exercise all the care reasonably necessary not to interfere with or injure foot-passengers crossing over or across said part of the highway ; that if, owing to their negligence, the foot-passenger, being in exercise of due care, was injured, the party passing with the team would be liable ; and that the plaintiff could not recover, unless, at the time of the injury, he was in that part of the highway where it was then proper for him to be, and was in the exercise of due care."

In view of the instructions thus already given, we think the request of the defendant can be construed only as a request to instruct the jury that the position of the child necessarily precluded his recovery; for if he meant to select one or two facts from a variety of facts given in evidence, all of which were in controversy, the judge rightfully declined to instruct upon one or two insulated facts which were not agreed to be proved, to the exclusion of a variety of facts which were also the subject of controversy, having already stated the true principles of law by which the jury were to be governed.

The instruction actually given, if rigidly analyzed, might be subject to the criticism that it was stating propositions of law having relation to liability arising from wilful misconduct rather than to liability growing out of negligence or want of proper care. The language used in reference to the plaintiff that he had a right to be there, and in reference to the defendant's servant that he would have no right to drive his horse on the sidewalk against him, would seem clearly language appropriate to an injury sustained by the wilful misfeasance of another, rather than to an injury unintentionally done through carelessness. But it was not so understood either by the court or the counsel,

but it was understood as applied to the facts of the case on trial, and its then condition; and of course is to be construed in connection with all the other instructions given in the case. In such connection it could not mean by the use of the words, "he had a right to be there, that was a proper use of the sidewalk," that, under the facts of this case, as matter of law, it was not negligence to be there, but simply that the jury might find under the circumstances of the case that it was not negligence in the plaintiff to be thus there. And so the remaining sentence of the instruction, "and the defendant's servant would have no right to drive his horse on the sidewalk against him," is not to be construed as an instruction that the collision of the defendant's horse with the plaintiff was, as matter of law, a wrongful act for which the defendant was liable, but only that it was competent for the jury to find that, under the circumstances of the case, the injury to the plaintiff resulted from the negligence of the defendant's servant, without contributory negligence on the part of the plaintiff. Any other construction of the ruling is so entirely inconsistent with the general course of instructions given at the trial, and the principles by which the jury were to be guided in arriving at a result, that we could not adopt it, unless we were compelled to do so by reason of the use of clear and unequivocal words. Such words are not used; but, as applicable to the subject matter and to the actual condition of the case, when given, and in connection with other instructions given, the interpretation which we give to the words is the more natural one, and affords no ground for exception.

*Exceptions overruled.*